UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re AT HOME CORPORATION et al.,
Debtors.
_____/
RICHARD A. WILLIAMSON,

               Appellant,

   v.

FRANK A. MORROW,

               Appellee.
_____/

No. C 04-2295 MHP
(C 01-32495-TC)

**MEMORANDUM & ORDER**
**Re: Appeal of Bankruptcy Court Order**

    On July 15, 2004, appellant Richard A. Williamson, the trustee of the At Home Corporation Bondholders Liquidating Trust ("BHLT"), filed in this court an appeal of an order entered by the United States Bankruptcy Court for the Northern District of California on May 25, 2005. In that order, the bankruptcy court held that the plan for liquidating the assets of the bankruptcy estate of the At Home Corporation ("the Liquidation Plan") and its affiliates (collectively "Debtors") authorized the General Unsecured Creditors Liquidating Trust ("GUCLT") to grant certain patent infringement defendants nonexclusive, nontransferable licenses to practice patents that had been in the possession of the At Home Bankruptcy estate. In its appeal, the BHLT argues that the bankruptcy court erred in interpreting the relevant provisions of the Liquidation Plan to confer such authority on the Liquidating Trust, whereas appellee Frank A. Morrow, the trustee of the GUCLT, urges this court to

affirm the order of the court below. Having considered the parties' submissions and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

Between 1995 and 2001, At Home Corporation offered high-speed Internet access, Internet content, and advertising services to business and residential customers. Tr. at 36. However, At Home's consistent record of operating losses and negative cash flow, coupled with its failure to secure adequate financing, eventually undermined its viability as a going concern. Id. at 36-37. Consequently, on September 28, 2001, At Home and certain affiliates (collectively "the Debtors") filed for voluntary bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. Id. at 37.

During the course of the proceedings before the bankruptcy court, the bankruptcy trustee appointed two committees to represent At Home's primary unsecured creditors, the Bondholders Committee and the General Creditors Committees. Id. at 40. In April 2002, the Committees agreed to settle their claims against the bankruptcy estate and proposed a plan for liquidating the Debtors' assets ("the Liquidation Plan"). See id. The Plan incorporated the Settlement Agreement and provided that, "to the extent applicable", the Agreement "shall be binding upon and enforceable by the three trusts established by the Plan. Under the terms of the Plan, the estate's assets would be conveyed to three trusts: the BHLT, the GUCLT, and the At Home Liquidating Trust ("AHLT"). Id. at 48. The unliquidated legal claims of the Debtors would be divided between the BHLT and the GUCLT, with the BHLT receiving the rights arising from claims against At Home's controlling shareholders and the right to receive proceeds from other causes of action being assigned to the GUCLT. Id. at 152-56, 161-62. These residual claims, which the Liquidation Plan refers to as the estate litigation, include "claims for the infringement or misappropriation of intellectual property rights." Id. at 162. Subject to several exceptions that are not relevant to this appeal, all remaining assets of the Debtors, including their intellectual property, were to be assigned to the AHLT. Id. at 124-25.

On August 15, 2002 the bankruptcy court approved the proposed Liquidation Plan, which incorporated the April 2002 settlement agreement by reference. See id. 70-98, 124. Under the terms of the Plan and the trust instruments that it created, the trustees of the BHLT and GUCLT are authorized to manage the trusts for the benefit of their respective beneficiaries, with the primary beneficiaries of the two trusts respectively identified as the members of the Bondholders Committee ("Bondholders") and the members of General Creditors Committee ("General Creditors"). Id. at 224, 248.[1] Included among the trustees' management powers are the power to prosecute, settle, and sell the legal claims that the were assigned to each of the respective trusts under the terms of the Liquidation Plan. Id. at 236, 258. The Liquidation Plan further provides that the assets conveyed to the AHLT are to be managed for the benefit of both the Bondholders and General Creditors, with the Bondholders holding equitable title to approximately fifty-five percent of the AHLT's assets and the General Creditors assigned the beneficial ownership of the remaining forty-five percent of the Trust. Id. at 124, 203.

Following the issuance of the order approving the Liquidation Plan, a dispute arose regarding the allocation of authority to license certain patents that had been the property of the bankruptcy estate. On one side of this dispute are the Bondholders, who view the right to license intellectual property as an incident of ownership and thus argue that the AHLT, as the assignee of At Home's patents, has the sole authority to license their use and to retain the royalties generated from the issuance of such licenses. The General Creditors take a different view, however, arguing that the right to prosecute and settle the patent infringement claims that had been assigned to the GUCLT includes the right to issue nonexclusive licenses for the purpose of settling such claims and that, as the assignee of the unliquidated patent infringement claims of the bankruptcy estate, the GUCLT, and not the AHLT, is entitled to receive any licensing revenues generated as a result such settlement.

Seeking to resolve this dispute, the GUCLT filed a motion in the bankruptcy court requesting clarification of the contested provisions of the Liquidation Plan. After holding two hearings on the clarification motion, the court ruled in favor of the General Creditors, holding that the Plan authorized both the General Creditors and the BHLTs to grant nonexclusive, nontransferable licenses

3

1 for the purpose of settling the respective patent infringement claims that had been assigned to each of
2 the trusts and to retain the revenues derived therefrom. Id. at 399. In setting forth the rationale for
3 its holding, the court, ruling from the bench, emphasized the overall structure of the Plan documents,
4 the desirability of awarding the benefits of prosecuting patent infringement actions to the party
5 bearing the costs of pursuing such litigation, and the inefficiencies that would result if the consent of
6 two or more trustees was required to settle claims for infringement of the Debtors' patents. Id. at
7 448-50.

8       On June 10, 2004, the bondholders filed this appeal of the bankruptcy court's clarification
9 order pursuant to 28 U.S.C. § 158(a). In addition to asserting that the court below erred in
10 interpreting the Plan and its associated trust instruments, the bondholders argue that the parties'
11 dispute was not ripe for adjudication at the time that the clarification order issued. The court also
12 notes the Statement of the Trustee of the AHLT which is contained in the record that was before the
13 Bankruptcy Court. Id. At 309. The court has reviewed the memoranda and record filed by the BHLT
14 and the GUCLT and considers their arguments below.

15

16 LEGAL STANDARD

17       Pursuant to 28 U.S.C. § 158(a), a district court has jurisdiction to hear appeals from final
18 judgments, orders, and decrees of the bankruptcy court for its judicial district. 28 U.S.C. §
19 158(a)(1). On appeal of the bankruptcy court's decision, the district court reviews questions of law
20 de novo and findings of fact for clear error. See In re Pace, 67 F.3d 187, 191 (9th Cir. 1995). Mixed
21 questions of fact and law are reviewed de novo. In re Beauchamp, 236 B.R. 727, 729 (B.A.P. 9th
22 Cir. 1999), aff'd, 5 Fed. Appx. 743 (2001).

23

24 DISCUSSION
25 I.    Ripeness
26       Before reaching the merits of the decision below, the court must consider the Bondholders'
27 argument that the parties' dispute was not ripe for adjudication in the bankruptcy court. As an
28

4

Article III court, the bankruptcy court is subject to the same constitutional constraints that preclude district courts from issuing advisory opinions. In re Cool Fuel, Inc., 210 F.3d 999, 1006 (9th Cir. 2000). These constraints include the ripeness doctrine, which is intended to prevent the premature adjudication of legal claims that are "remote" or "speculative." Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 671 (9th Cir. 2004). Here, the gravamen of the Bondholders' ripeness argument lies in the fact that the issue before the bankruptcy court involved the potential settlement of a patent infringement action. Specifically, the Bondholders note that it remained uncertain at the time that the bankruptcy court's order issued whether the parties to that action would agree to settle their claims, and that even if they did so, there would be no guarantee that the settlement agreement would have required the GUCLT to grant the accused infringer a nonexclusive, nontransferable license to practice At Home's patents. For those reasons, the Bondholders characterize the bankruptcy court's clarification order as an improper advisory opinion and argue that the court should have declined to entertain the General Creditor's motion on ripeness grounds.

As ripeness is a question of law, the bankruptcy court's resolution of that issue is reviewed de novo. See Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 162 (9th Cir. 1993) (citing Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990)). In undertaking this inquiry, the court is mindful that "the basic rationale of ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Clinton v. Acequia, Inc., 94 F.3d 568, 572 (9th Cir. 1996) (internal quotation marks omitted) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). Consequently, a finding that a dispute is ripe for adjudication requires a showing that judicial involvement in a dispute is necessary to prevent "immediate and certain injury to a party." See id. (citing Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975)).

That being said, when questions of ripeness arise in the context of contractual disputes among private parties, certainty of injury to a party's legal interest should not be confused with certainty regarding whether the court's decision will impact a party's financial well-being. This is the message conveyed by the Ninth Circuit's decision in Principal Life, which arose from a

declaratory judgment action involving a rent recalculation provision in a ground lease. See 394 F.3d at 668-69.  The property's lessee sought a judicial declaration of its rights and obligations under the lease for the purpose of informing its decision as to whether to sell the lease, to develop the property as a leasehold, or to purchase the property from the landowner. Id. at 669.  The district court held that it lacked subject matter jurisdiction to entertain the declaratory judgment claim because the lessee had failed to prove that it would suffer "a direct and immediate hardship that is more than possible financial loss." Principal Life Ins. Co. v. Robinson, No. CV 00-1345-BR, 2002 WL 31974400, at *4 (D. Or. Sept. 26, 2002) (internal quotation marks, original alterations, and citations omitted).  The Ninth Circuit disagreed, however, noting that the lessee's inability to accurately estimate the present value of its leasehold interest affected its ability to make an informed business decision regarding the use or disposition of that asset.  See Principal Life, 394 F.3d at 671-72.  Thus, the court concluded that because this difficulty created a "substantial controversy of sufficient immediacy and reality" to warrant judicial invention, the lessee's declaratory judgment claim was ripe for adjudication.  See id. (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

       Although the procedural posture of the dispute at issue in Principal Life differs from that of the case at bar, the similarities between the two cases are nonetheless striking.  Like the plaintiff in Principal Life, the GUCLT owns an asset of uncertain value from which they have sought to profit, the asset in this case being an unliquidated legal claim.  To resolve that uncertainty, the General Creditors have sought relief through the judicial process in the form of a clarification order from the bankruptcy court.  This is precisely the type of dispute that the Ninth Circuit found to be ripe in Principal Life, and that court's rationale—the need of a party to a contract to know the contract's legal effect if it is to make an informed business decision—applies with equal force in these proceedings.  Thus, being bound by the Ninth Circuit's reasoning in that case, this court is compelled to conclude that the court below was presented with a ripe dispute when it ruled on the General Creditor's motion to clarify.  The court therefore holds that the bankruptcy court acted properly in reaching the merits of the clarification motion.

II.     The Liquidation Plan

Having rejected the Bondholders' ripeness argument, the court must address the substance of the bankruptcy court's ruling. While the Bondholders raise a number of points of error on appeal, the resolution of those issues ultimately turns on the question of whether the court below erred in concluding that the Liquidation Plan authorizes the GUCLT to grant nonexclusive, nontransferable licenses as an incident of its authority to settle patent infringement claims. This is essentially a question of contract interpretation, since a confirmed bankruptcy plan is viewed as a contract between the parties who agree to the plan, and the law of the state in which the bankruptcy proceedings commenced provides the rules of decision for interpreting that contract. See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 588 (9th Cir. 1993). The court thus applies general principles of California contract law to resolve the parties' dispute.

Under California law, "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992) (citing Cal. Civ. Code § 1636). This is an objective inquiry, requiring the court to first look to the clear and unambiguous language of the contract for the purpose of ascertaining the parties' intent. See In re Bennett, 298 F.3d 1059, 1064 (9th Cir. 2002) (applying California law); see also Cal Civ. Code. § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). As both the existence of ambiguity in a contract and the meaning of a contract's unambiguous language are questions of law, this court reviews the bankruptcy court's resolution of these issue de novo. See Bennett, 298 F.3d at 1064.

The court begins this analysis by noting that the gap between the parties' positions is actually quite narrow. Indeed, the General Creditors and Bondholders both interpret the Liquidation Plan to give the GUCLT the sole authority to authorize the settlement of the patent infringement claims that have been assigned to it and to retain the proceeds from the settlement of those claims. Likewise, it undisputed that the title to At Home's patents is now held by the AHLT. The question to be resolved by the court thus turns on the narrow issue of whether the right to grant nonexclusive, nontransferable licenses is an incident of patent ownership or, alternatively, whether such a right

attaches to the ownership of the unliquidated patent infringement claims that have been assigned to the GUCLT.

Before answering this question, it is helpful to step back and look at the entire scheme established by the interlocking documents from which the dispute arises. A Settlement Agreement was entered into on April 19, 2002, among At Home Corporation and its affiliated debtors; the Committees of Unsecured Bondholders and Unsecured Creditors; and the General Creditors Committee. The Agreement was incorporated into the Liquidation Plan which was confirmed by the Court on August 15, 2002, along with the three trusts discussed above that were established pursuant to the Plan. Each of these trusts was governed by a separate Trust Agreement and approved by the order confirming the Plan. Tr. at 70, 80. All of these documents must be examined to understand the scheme that was adopted. They must be read together to give effect to the intention of the parties.

It can not be seriously disputed that only the owner of a patent has a right to license its exploitation, and that remains the case regardless of whether that license is exclusive and transferable or otherwise. The Liquidation Plan simply does not grant such ownership rights to the General Creditors, and nothing in the Plan, the settlement agreement, or the trust instruments suggests that the parties contemplated such an arrangement. Indeed, it is telling that although the management powers of the trustee of the AHLT include the authority to sell and license trust assets, the parallel provision of the GUCLT instrument includes only the power of sale. Compare Tr. at 211-12 (AHLT Agreement), with Tr. at 258 (GUCLT Agreement). This makes sense, given that the assets that were assigned to the GUCLT are comprised exclusively of unliquidated legal claims. Although some of those claims arise from the infringement of At Home's intellectual property, they are not themselves intellectual property and accordingly cannot be licensed.

Seeking to overcome the clear effect of the Liquidation Plan's provisions, the General Creditors point out that a nonexclusive, nontransferable license is nothing more than a covenant not to sue the licensee for making, using, or selling the patented invention. That may be true, but it is also beside the point. The resolution of the parties' dispute hinges upon who has the authority to

8

enter into such a covenant rather than the nature of the rights conferred upon the covenantee, and, as the Federal Circuit recently observed, a nonexclusive license is "a covenant *by the patent owner* not to sue the licensee for making, using, or selling the patented invention." Jacobs v. Nintendo of Am., Inc., 370 F.3d 1097, 1101 (Fed. Cir. 2004) (emphasis added) (quoting Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1345 (Fed. Cir. 2001)). As noted above, there is no dispute that the legal owner of the patents in question is the AHLT. Accordingly, it is the AHLT, and not the GUCLT, that retains the right to license accused infringers to practice the patents that it owns, notwithstanding the nonexclusive and nontransferable nature of those licenses.

The General Creditors make much of the provisions of the Settlement Agreement contending that appellant's arguments put the provisions of the Agreement at odds with the Plan, and that Article 7B of the Plan provides that where there is a conflict between the two documents the Agreement controls. Neither of these statements is correct. The Plan and the Settlement Agreement, as well as the Trust Agreements, are consistent. Under the Settlement Agreement the Plan Agent, defined in the Plan as the Trustee of the AHLT, has the authority to sell assets of the Plan. This naturally follows from Article 7C.3 of the Plan and from the AHLT Agreement which vests ownership of the assets in the AHLT. The provisions are not in conflict. Furthermore, Article 7B does not provide that the Agreement controls over the Plan. It states that the Agreement is incorporated into the Plan and "shall control with respect to the matters addressed therein". (Emphasis added) Licensing is not addressed in the Settlement Agreement. There is no conflict.

Nor is the court persuaded by the General Creditor's argument that the right to collect damages that might arise from future acts of patent infringement necessarily implies a power to grant licenses to settle those contingent damages claims. This argument confuses the right to pursue unmatured claims for damages with the authority to collect royalties in exchange for authorizing the future use of the patent. While the Liquidation Plan unambiguously assigns the right to such future damages claims to the GUCLT, the Plan is equally clear that the AHLT, as the assignee of all rights in the Debtors' patents, has the sole and exclusive authority to license those patents and to collect royalties therefrom.

9

Both the General Creditors and the court below have suggested that this is a needlessly inefficient way of liquidating the Debtors' assets. Whatever the merits of that argument might be, it is undisputed that the arrangements that the parties have made were the product of arm's-length negotiations among sophisticated parties. Neither this court nor the court below is well-equipped to second-guess the wisdom of such arrangements, nor does California law authorize either court to do so.[2] Accordingly, this court is compelled to conclude that the bankruptcy court erred in holding that the Liquidation Plan authorized the GUCLT to license patents owned by the AHLT for the purpose of settling patent infringement litigation.

For the same reasons, the court below also erred in concluding that the GUCLT is entitled to retain any royalties that might be generated by issuing such licenses. Those royalties and the right to grants the licenses that might generate them are the sole and exclusive property of the AHLT, without regard to the form that those licenses take or to whom they are issued. The court accordingly vacates the clarification order of the bankruptcy court and remands this action to that court for further proceedings consistent with this order.

CONCLUSION

For the reasons stated above, the clarification order of the bankruptcy court is hereby REVERSED and VACATED. This action is hereby REMANDED for further proceedings consistent with this order.

IT IS SO ORDERED.

Date:   August 3, 2005

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

**ENDNOTES**

1. The instrument creating the BHLT also includes provisions for sharing distributions with the non-primary beneficiary creditors, the details of which are not relevant here. See Tr. at 234-35.

2. The court notes that in her Statement in Response to the Motion for Order Clarifying Effect..., filed in the Bankruptcy Court, the Trustee of the AHLT recommended an "alternative approach" that the parties could take to resolve their concerns. This may be a commendable approach to follow.

United States District Court
For the Northern District of California